UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES BOBBY DAVENPORT, III,<br><br>Plaintiff,<br><br>v.<br><br>GOMEZ, et al.,<br><br>Defendants. | No. 2:16-cv-1739 JAM KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner, proceeding pro se, with a civil rights action. Defendants' motion for judgment on the pleadings is now before the court. As set forth below, the undersigned recommends that the motion be granted, but that plaintiff's claims be dismissed without prejudice.

I. Plaintiff's Amended Complaint

Plaintiff claims that in March of 2015, defendants Ramirez and Lewis allegedly intentionally housed plaintiff with a J-category inmate to set up an altercation that would enable them to transfer the J-category inmate out of their unit. An altercation ensued, and plaintiff contends that defendants Gomez, Hernandez, and Thompson failed to protect plaintiff and were deliberately indifferent to his safety and medical needs by, *inter alia*, failing to intervene to protect him from the planned altercation, failing to properly decontaminate him following the application of pepper spray, and retaining him in a holding cage for over 5 hours while he was

1

wheezing, coughing, and suffering an inability to breathe due to his asthma, and refusing to provide his inhaler.

II. Legal Standards: Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings may be granted when, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. Chavez v United States, 683 F.3d 1102, 1108 (9th Cir. 2012). The applicable standard is essentially identical to the standard for a motion to dismiss under Rule 12(b)(6). United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 n.4 (9th Cir. 2011). Thus, although the Court must accept well-pleaded facts as true, it is not required to accept mere conclusory allegations or conclusions of law. See Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).

In ruling on a motion for judgment on the pleadings, a court may consider evidence beyond the pleadings when (1) it takes judicial notice under Federal Rule of Evidence 201, or (2) material is incorporated by reference to the complaint. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998 (9th Cir. 2018). The Court "need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit" attached to the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (citation omitted).

A motion for judgment on the pleadings should be granted "when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).

III. Administrative Exhaustion in California Prisons

"No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. Porter v. Nussle, 534 U.S. 516, 524 (2002); Ross v. Blake, 136 S. Ct. 1850, 1856-57 (2016) (mandatory language of § 1997e(a) foreclosures judicial discretion to craft exceptions to the requirement). All available remedies must be exhausted; those remedies "'need not meet federal standards, nor must they be 'plain, speedy,

and effective.'" Porter, 534 U.S. at 524. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. Id.; Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) requires ''proper exhaustion'' of available administrative remedies. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires using all steps of an administrative process and complying with ''deadlines and other critical procedural rules.'' Id. at 90; Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010) (quoting Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009)). In California, a grievance must be timely appealed through the third level of review to complete the administrative review process. Harvey, 605 F.3d at 683; Cal. Code Regs. tit. 15, § 3084.1(b).

An inmate must exhaust available remedies, but is not required to exhaust unavailable remedies. Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (*en banc*). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" Id. (quoting Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005)). "Accordingly, an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Ross, 136 S. Ct. at 1858 (quoting Booth, 532 U.S. at 738).

The Prison Litigation Reform Act ("PLRA") exhaustion requirement is not jurisdictional but rather creates an affirmative defense that defendants must plead and prove. Albino, 747 F.3d at 1166. Thus, prisoners are not required to specifically plead or demonstrate exhaustion in their complaints. The Ninth Circuit has held that, in general, the defense should be brought as a Rule 56 motion for summary judgment, unless in the rare event that the prisoner's failure to exhaust is clear on the face of the complaint, id. at 1171, or from exhibits appended to the complaint, as discussed above.

IV. Plaintiff's Administrative Appeals

The following appeals and responses were appended to plaintiff's amended complaint.

In plaintiff's first level appeal, 15-01042, he alleged he was involved in an incident on March 23, 2015, that resulted in him being covered in OC pepper spray. (ECF No. 13-1 at 14.) Plaintiff was left in the cage for over 30 minutes, with pepper spray on his face and in his eyes.

3

(ECF No. 13-1 at 14, 16.) Plaintiff claims he was refused a full decontamination shower, and when he got out of the water, he still had pepper spray in his eyes and body, and they gave him back the same underwear and socks with pepper spray on them. (ECF No. 13-1 at 16.) When he returned to the ASU he requested a new pair of underwear and socks, and after a few hours his request was granted. After he showered, he also requested a change of sheets, but such request was denied, and he had to use the same sheets infused with pepper spray for over a week, and had to wash the pepper spray out of his eyes every morning, and developed migraines. (Id.) Plaintiff included no names of officers in his appeal. (Id.)

On April 19, 2015, plaintiff's appeal log no. 15-1042 was rejected due to plaintiff's failure to provide the names of the staff alleged to have refused a full decontamination shower and change of sheets. (ECF No. 13-1 at 12.) On that form, plaintiff identified the officers as Correctional Officers E. Hernandez and M. Thompson, and that the officer who refused the sheets was a third watch correctional officer in Z unit (John Doe), who plaintiff was attempting to identify. (Id.) On May 20, 2015, certain unidentified documents were returned to plaintiff because they were not an appeal. (ECF No. 13-1 at 13.)

Appeal log no. 15-1042 was accepted, and assigned on June 23, 2015. (ECF No. 13-1 at 14.) On July 27, 2015, plaintiff's first level appeal log no. 15-1042 was partially granted. (ECF No. 13-1 at 22-24.) In his request for second level review, plaintiff complained that the first level reviewer, Sgt. T. Gomez, had a conflict of interest because he was the senior officer in the incident resulting in plaintiff being pepper-sprayed, but added "[t]his appeal is not about what lead up to me getting sprayed." (ECF No. 13-1 at 15.) Plaintiff's second level appeal was denied on August 27, 2015. (ECF No. 13-1 at 25-26.)

On October 1, 2015, plaintiff signed the section expressing dissatisfaction with the second level review, seeking third level review. (ECF No. 13-1 at 15.) On December 14, 2015, plaintiff's third level appeal was rejected, and was mailed December 15, 2015. (ECF No. 13-1 at 15.)

On January 10, 2016, an amended second level response issued on appeal log no. 15-1042. (ECF No. 13-1 at 27-28.) The response noted that plaintiff was interviewed on August 27,

2015 by Correctional Lt. R. Haynie; and Correctional Officers E. Hernandez and Officer M. Thompson were also interviewed. Plaintiff's appeal was partially granted, and he was informed that once a decision was rendered at the third level, his administrative remedies would be exhausted. (Id. at 28.)

Plaintiff provided a copy of a CDCR 22 inmate request for interview bearing the handwritten number 1503988. (ECF No. 13-1 at 43.) The "received by: print staff name" box does not have a name printed but includes an illegible mark. The date box has the date 3-1-16. The signature block is also illegible. Plaintiff wrote that the form was forwarded to the Chief, Inmate Appeals Branch on 3-1-16. (Id.)

On March 2, 2016, plaintiff amended section F in appeal log no. 15-1042, which bears a March 16, 2016 received stamp from the Appeals Branch. (ECF No. 13-1 at 18-21.) Plaintiff complained that prison staff had not addressed due process violations from the first level response, i.e. that they left plaintiff handcuffed behind his back for over 5 hours, etc. (ECF No. 13-1 at 19.)

On March 18, 2016, the staff response was signed by "Sandoval," who wrote "your appeal has been received and will be processed in date order." (ECF No. 13-1 at 43.)

On June 7, 2016, referencing third level review #1503988 and SAC-15-01042, the Office of Appeals cancelled plaintiff's appeal as untimely. (ECF No. 13-1 at 10.) The response noted that plaintiff's amended second level review was completed/returned on January 26, 2016, and the appeal package was submitted to the Office of Appeals on March 16, 2016. (Id.) The letter does not address plaintiff's position that he did not receive the second level appeal until March 1, 2016. (Id.) Plaintiff was advised that he had 30 calendar days to appeal the cancellation. (Id.)

On June 15, 2016, plaintiff filed an appeal challenging the cancelled appeal, and attached the CDCR 22 form. (ECF No. 13-1 at 7.) Plaintiff stated that he did not receive the second level amended appeal until March 1, 2016. (ECF No. 13-1 at 9.) On June 20, 2016, plaintiff wrote on the CDCR 22 form that his appeal should not have been cancelled at the third level because he sent the appeal when he received the amended response back on March 1, 2016. (ECF No. 13-1 at 45.) Plaintiff noted he also appealed the cancellation. (Id.)

5

On July 25, 2016, again referencing third level review #1503988 and SAC-15-01042, the Office of Appeals informed plaintiff that his attempt to submit an appeal that was previously cancelled was misuse or an abuse of the appeals process. (ECF No. 13-1 at 11.)

On August 18, 2016, referencing third level review #1514706 and OOA-15-03988, the Office of Appeals rejected plaintiff's appeal because it was missing necessary supporting documents. (ECF No. 13-1 at 31.) It appears plaintiff handwrote on the August 18, 2016 letter that "all 3 [missing documents] are enclosed, as well as his request for interview (CDC 22 form) that he had the office sign to confirm he was given the second level response on March 1, 2016, confirming that his appeal should not have been cancelled. (ECF No. 13-1 at 31.) It appears the appeal was later accepted, because in section G of plaintiff's appeal challenging the cancellation, prison officials marked the box "accepted at the third level of review," stamped date August 18, 2016, and then marked the box, "Denied." (ECF No. 13-1 at 8.) The decision was mailed to plaintiff on November 4, 2016.

On November 3, 2016 again referencing third level review #1503988 and SAC-15-01042, the Office of Appeals issued a third level appeal decision on plaintiff's claim that his appeal was inappropriately cancelled as untimely. (ECF No. 13-1 at 29.) The response found that plaintiff failed to provide any evidence to support his claim that he did not receive the amended second level review decision until March 1, 2016, and denied the appeal. (Id.)

IV. Discussion

Plaintiff opposes defendants' motion on the grounds that administrative remedies were effectively unavailable. Defendants contend that the exhibits appended to plaintiff's complaint demonstrate that remedies were available, and that plaintiff continued to pursue such remedies even after he filed the instant action. Plaintiff was required to exhaust his available remedies before July 25, 2016, the date he filed the instant action, unless administrative remedies were unavailable.

    A. Did plaintiff exhaust prior to suit?

A cancellation or rejection decision does not exhaust administrative remedies. Cal. Code Regs. tit. 15, §§ 3084.6, 3084.1(b). In order to properly exhaust, plaintiff was required to comply

with CDCR's deadlines and other critical procedural rules. Woodford, 548 U.S. at 90. Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative appeal. Id. at 90-93. Rather, "to properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]-rules that are defined not by the PLRA, but by the prison grievance process itself." Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218). The administrative process is exhausted only after the inmate complies with all relevant prison grievance procedures and receives a decision from the third level. Woodford, 548 U.S. at 95-96; see also Sapp v. Kimbrell, 623 F.3d 813, 826 (9th Cir. 2010) (dismissal is appropriate where administrative grievances were properly screened out).

Here, the record demonstrates that plaintiff did not receive a third level decision on appeal SAC-15-01042; rather, such appeal was rejected or cancelled. With regard to his appeal of the cancellation, the third level decision was not issued until November 3, 2016. Therefore, plaintiff did not exhaust his administrative remedies prior to filing the instant action on July 25, 2016. The court next evaluates whether administrative remedies were available.

B. Were the remedies available?

Plaintiff argues that his remedies were not available because the warden did not sign off on the amended second level of appeal until January 26, 2016, and plaintiff did not receive the amended second level appeal until 33 days after the warden signed off on it. (ECF No. 36 at 4.) Plaintiff claims he was moved from CSP-SAC to CSP Corcoran before the amended second level of appeal was complete. (Id.) Plaintiff contends he had an officer sign the CDCR 22 form to confirm he gave plaintiff the amended second level appeal response on March 1, 2016, and therefore plaintiff's March 2, 2016 request for third level review was timely. (Id.) Plaintiff argues that his appeal was improperly cancelled, rendering his administrative remedies unavailable. Further, plaintiff argues that his administrative remedies were rendered effectively

7

unavailable by Sgt. Gomez' involvement in denying plaintiff's first level appeal. Sgt. Gomez had a conflict of interest because he was the senior officer over the March 22, 2015 incident, violating CDCR Title 15 § 3084.7(1)(A) (appeal responses shall not be reviewed and approved by a staff person who participated in the event or decision being appealed).

Defendants contend that plaintiff's ability to appeal the cancellation demonstrate that administrative remedies remained available to plaintiff beyond the date he filed the instant action.

In 2016, the Supreme Court reiterated that "all inmates must now exhaust all available remedies," and district courts must apply this statutory requirement. Ross, 136 S. Ct. at 1858. Therefore, there is no "special circumstances" exception to the PLRA's rule of exhaustion. Id. That said, the PLRA does provide one textual exception by its use of the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Id., quoting Booth, 532 U.S. at 737-38. In Ross, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1858-59. These circumstances include: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59). However, "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted).[1]

---

[1] The Ninth Circuit has characterized the list in Ross as "non-exhaustive." Andres, 867 F.3d at 1078. Various other circumstances render administrative remedies unavailable, including the failure of prison officials to properly process a prisoner's grievance. Id. at 1079. When an inmate's administrative grievance is improperly rejected on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224-26 (9th Cir. 2010) (warden's mistake rendered prisoner's administrative remedies "effectively unavailable"); Thorns v. Ryan, 2008 WL 544398, *4 (S.D. Cal. Feb. 26, 2008) (in light of evidence the prisoner was transferred to another facility and asserted he did not receive the second level response until later, defendants were not entitled to dismissal absent

Here, plaintiff's argument that because his appeals were cancelled as untimely and he was not granted relief from such cancellation further exhaustion cannot be accomplished, misses the mark. The fact that plaintiff failed to comply with the procedural requirements <u>prior</u> to filing the instant action, including meeting prison time limits, does not excuse plaintiff from exhaustion of the administrative remedies. To do so, would render the entire appeals process useless. For example, in <u>Woodford</u>, the Supreme Court explained that

> a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file one time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

<u>Id.</u>, 548 U.S. at 95.

Plaintiff's arguments do not demonstrate that the appeals process was unavailable. Rather, plaintiff was able to appeal the cancellation of appeal log nos. 1503988 and SAC-15-01042; he simply failed to wait until such appeal was decided at the third level before he filed his case in federal court. The third level appeal was denied on November 3, 2016, long after plaintiff filed the instant action on July 25, 2016. Because his appeal was pending at the time this action was filed, plaintiff failed to exhaust his available remedies <u>prior</u> to filing this action. Because it is undisputed that plaintiff's appeal was pending at the time this action was filed, defendants' motion for judgment on the pleadings should be granted, but this action should be dismissed without prejudice to plaintiff raising his claims in a new action where his challenges to the November 3, 2016 denial are more appropriately raised.

---

evidence showing the prisoner actually earlier received the second level response); <u>Sanchez v. Penner</u>, 2008 WL 544591 (E.D. Cal. Feb. 26, 2008) (defendant Wedell failed to rebut prisoner's evidence that his appeal was late due to his transfer to a different prison, making it impossible to satisfy the 15 day time limit on appeals). <u>See also</u> <u>Reyes v. Smith</u>, 810 F.3d 654, 658, 659 (9th Cir. 2016) (although inmate failed to identify the specific doctors, his grievance plainly put prison on notice that he was complaining about the denial of pain medication by the defendant doctors, and prison officials easily identified the role of pain management committee's involvement in the decision-making process, and rendered a decision on the merits of the grievance at each step of the process).

VIII. <u>Conclusion</u>

Because the exhibits appended to plaintiff's amended complaint demonstrate that (a) his appeal of the cancelled appeal was pending at the time he filed the instant action, and (b) a decision on such appeal was not rendered until November 3, 2016, plaintiff has failed to properly exhaust his administrative remedies prior to filing in federal court. Defendants' motion for judgment on the pleadings should be granted, and this action dismissed without prejudice. See <u>McKinney v. Carey</u>, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statute makes exhaustion a precondition to suit."); <u>Vaden v. Summerhill</u>, 449 F.3d 1047, 1051 (9th Cir. 2006) (for purposes of 42 U.S.C. § 1997e, a prisoner brings an action when he submits his complaint to the court).

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for judgment on the pleadings (ECF No. 33) be granted; and

2. This action be dismissed without prejudice.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 14, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/dave1739.jop